IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-437-KS

| | |
|---|---|
| MICHAEL BATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Michael Batts ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues, and the pending motions are ripe for adjudication. On November 30, 2021, the court held oral argument in this matter. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #18], denies Defendant's Motion for Judgment on the Pleadings [DE #22], and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on February 27, 2017, with an alleged onset date of December 2, 2016. (R. 20, 187–88.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 20, 81–82, 121–22.) A hearing was held on March 11, 2019, before Administrative Law Judge ("ALJ") Teresa Hoskins-Hart, who issued an unfavorable ruling on July 22, 2019. (R. 17–77.) On June 15, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On August 14, 2020, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court

should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the

3

claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through March 31, 2022. (R. 22.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of December 2, 2016. (*Id.*) Next, the ALJ determined Plaintiff had the severe impairments of small left cerebellar infarcts and migraine without aura. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 23.) The ALJ expressly considered Listings 11.04 and 12.02. (R. 23–24.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except [Plaintiff] can never climb ladders, ropes, and scaffolds and can frequently climb stairs and ramps. He can no more than frequently balance. He must avoid concentrated or frequent exposure to noise or hazards in the work setting, including the operation of machinery and motorized vehicles. [Plaintiff] is limited to

4

maintaining concentration, persistence, and pace for performing simple, repetitive tasks characteristic of unskilled work at all reasoning levels of work.

(R. 24–25.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 25.) At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (R. 28.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: hand packager (DOT #920.587-018) and laundry worker (DOT #361.685-018). (R. 29.) The ALJ concluded that Plaintiff has not been disabled under the Act since December 2, 2016, Plaintiff's alleged onset date, through July 22, 2019, the date of the ALJ's decision.[1] (R. 30.)

## IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by:

(A) failing to account for the limiting effects of Plaintiff's chronic migraine headaches in the RFC and to explain how the limitations assessed in the RFC address limitations caused by Plaintiff's migraines (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #] at 10–13); and

---

[1] At oral argument, the parties notified the court that the Commissioner has approved, as of July 23, 2019, a subsequent claim from Plaintiff. Plaintiff's counsel stated that Plaintiff did not contend that this subsequent approved claim was an independent basis for remand (presumably pursuant to sentence six of 42 U.S.C. § 405(g)). Neither party has submitted documentation related to this subsequent award of benefits.

5

(B) failing to properly evaluate Plaintiff's post-stroke memory deficits (id. at 13–19).

For the reasons explained below, remand to the Commissioner is necessary.

### A. RFC and Migraines

To survive review, the ALJ must explain how the evidence led to her conclusions. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at [her] conclusions"); SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved").

ALJ Hoskins-Hart found Plaintiff's migraines to be a severe impairment. (R. 22.) However, the only limitations in the RFC related to this severe impairment are, apparently, (i) a climbing prohibition as to ladders, ropes, and scaffolds, and a climbing limitation as to stairs and ramps, (ii) a balance limitation, and (iii) avoidance of noise or hazards. (R. 26.) Plaintiff identifies two problems with the RFC limitations. First, the limitations bear no relation to Plaintiff's migraines, as there is no evidence in the record that Plaintiff's migraines are related to noise, heavy lifting, or hazards, and the ALJ failed to explain why she believes the RFC limitations address Plaintiff's migraines. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 11–12.) Second, ALJ Hoskins-

6

Hart's statement that Plaintiff's migraines "decreased [] following treatment" omits relevant evidence regarding the alleged reduction in migraine frequency and fails to explain how she arrived at this conclusion in the context of countervailing evidence. (*Id.* at 12.) The court agrees with Plaintiff for the following reasons.

First, it is unclear how the RFC limitations regarding climbing, balancing, and exposure to noise and hazards in a work setting are supposed to "minimize migraine exacerbation." (R. 26.) As Plaintiff notes, there is no evidence in the record indicating that these types of work activities and exposures cause or exacerbate Plaintiff's migraines. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 11–12.) Rather, there is evidence that the migraines began after Plaintiff's strokes. (*See, e.g.,* R. 1004, 1012 (noting that chronic headaches started occurring after Plaintiff's second stroke).) The Commissioner does not respond to this issue in her brief. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #23] at 8–12.) ALJ Hoskins-Hart stated that she assessed the climbing limitations based on "evidence of fogginess due to migraines," but did not explain why further limitations were not imposed. (R. 27.) Accordingly, the court is left to guess as to this aspect of the RFC. *See Mascio*, 780 F.3d at 637.

Second, ALJ Hoskins-Hart's reliance on a decrease in Plaintiff's migraines is not adequately explained. (R. 27 (citing R. 346, 360–61, 366, 392, 841–46, 854, 966–69, 1003–06, 1142–43, 1374, 1377–79, 1434, 1441–42, 1455, 1510).) The January 9, 2019, note referenced by the ALJ, while stating that

7

Plaintiff reported a decrease in migraines to only three days per week, also indicates no reduction in severity. (R. 1441–42.) Such frequency and severity could still impact Plaintiff's ability to work full-time. (R. 65 (Vocational Expert testifying that a person who is off-task for more than 10% of a workday would not be employable).) Further, as Plaintiff notes, he reported an increase in the frequency of migraines about one week later. (R. 1512 (treatment note from January 15, 2019, indicating headaches present about four out of five days with no headaches on "perhaps 20% of days").) ALJ Hoskins-Hart failed to explain how she resolved this material inconsistency or ambiguity.[2] *See* SSR 96–8p, 1996 WL 374184, at *7. Furthermore, citing the treatment note indicating a decrease in headaches but omitting relevant, countervailing information from that same treatment note and another treatment note shortly thereafter is proscribed cherry-picking. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). Accordingly, remand is necessary for the Commissioner to address the functional impact of Plaintiff's chronic migraines.

---

[2] On review, the Commissioner makes several additional arguments relating to apparent inconsistencies in Plaintiff's statements about his symptoms. (Def.'s Mem. Supp. Mot. J. Pldgs. at 9–11.) The problem with those arguments, though, is that ALJ Hoskins-Hart did not make them. *See Arakas*, 983 F.3d at 109 (post-hoc rationalization of ALJ's findings not permitted).

### B. Memory Deficits

ALJ Hoskins-Hart found Plaintiff has only moderate limitations in understanding, remembering, or applying information in work-related tasks. (R. 23–24.) In making this finding, ALJ Hoskins-Hart stated that treatment notes indicating normal findings of attention and concentration justified a finding of only moderate limitation in understanding, remembering, or applying information. (R. 23–24, 27.) ALJ Hoskins-Hart explained that she found the RFC's limitation to "maintaining concentration, persistence, and pace for the perform[ance] of simple, repetitive tasks characteristic of unskilled work at all reasoning levels" accommodated Plaintiff's memory deficits. (R. 26.)

However, Plaintiff's ability to concentrate and pay attention is distinct from his ability to remember and apply information. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(E)(1), (3). ALJ Hoskins-Hart conflated two separate domains of mental functioning and appeared to use Plaintiff's ability in one (concentration and attention) to justify a finding that he had similar ability in another (memory). ALJ Hoskins-Hart never explained why the retention of normal attention and concentration means that Plaintiff is only moderately limited in remembering and applying information, or why the limitation regarding concentration, persistence, and pace adequately accommodates memory deficits. (R. 23–24, 26–27.) This failure is especially problematic in this case because the record is replete with information about Plaintiff's memory deficits caused by his series of strokes. (*See, e.g.,* R. 349, 359–60, 368,

9

Case 5:20-cv-00437-KS   Document 30   Filed 02/28/22   Page 9 of 11

507, 802, 844–45 (findings from neuropsychological evaluation conducted by Dr. Laurie Leach, Ph.D., that Plaintiff has, among other things, "severely reduced [memory abilities] for both visual and verbal information with very limited encoding or capacity for new information"), 854, 996–97, 1511.) Even the Commissioner's psychological consultants at the initial and reconsideration levels found Plaintiff's memory deficits limited him to the ability to perform jobs with only "very short and simple instructions," which is more limited than what ALJ Hoskins-Hart found. (*Compare* R. 24–26 *with* R. 77, 95.) This is relevant because the jobs cited at step five are both Dictionary of Occupational Titles (DOT) reasoning level 2 jobs, which require a person to "carry out detailed but uninvolved written or oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702 (Jan. 1, 2016); *see also Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019).

The reasons given by ALJ Hoskins-Hart for rejecting the opinions of the Commissioner's psychological consultants at the initial and reconsideration levels and of neuropsychologist Dr. Leach cannot withstand review. While ALJ Hoskins-Hart stated she assigned "great weight" to the psychological consultants' opinions, she rejected those consultants' opinion that Plaintiff was limited to jobs requiring only "very short and simple instructions" because Plaintiff had "normal attention and concentration, intact knowledge and language, and normal speech." (R. 27.) As explained above, that is a conflation

10

of two separate areas of mental functioning and no explanation is given as to the relationship between the two areas. As to Dr. Leach's opinions contained in the neuropsychological evaluation, ALJ Hoskins-Hart stated she assigned these opinions "little weight" because they "were intended as short-term and non-durational opinions, which did not include a function-by-function analysis." (R. 28.) But Dr. Leach says nowhere in her report that her opinions were "short-term" and "non-durational." (R. 841–46.) Moreover, there is no requirement that neuropsychological evaluations contain a "function-by-function analysis" of a claimant's abilities; that is a duty for the ALJ. Here, ALJ Hoskins-Hart failed to fulfill that duty, providing another reason for remand. *See Dowling v. Comm'r of SSA*, 986 F.3d 377, 387–88 (4th Cir. 2021); *Thomas*, 916 F.3d at 311–12; *see generally* SSR 96–8p, 1996 WL 374184. Accordingly, remand is necessary.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE #18] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #22] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 28th day of February 2022.

                                                  KIMBERLY A. SWANK
                                                  United States Magistrate Judge